# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:22-CV-00142-HBB

**TOMMY T.**[1]                                                                          **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**[2]                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### I.     BACKGROUND

Before the Court is the Complaint (DN 1) of Tommy T. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The Plaintiff filed a brief (DN 19), Defendant filed a brief in response (DN 23), and Plaintiff filed a reply (DN 24). For the reasons that follow, the final decision of the Commissioner is **REVERSED**, and pursuant to sentence four of 42 U.S.C. § 405(g) the case is **REMANDED** to the Commissioner with instructions to consider additional evidence and conduct additional proceedings to remedy the below identified defects in the original proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered January

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit.

24, 2023 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## II. FINDINGS OF FACT

On June 3, 2020, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 13, 163-66). Plaintiff alleged that he became disabled on December 24, 2019, as a result of decreased heart and lung function, diabetes, nonfunctioning bladder, numbness in lower extremities, neuropathy, cervical disc disease, and lumbar disc disease (Tr. 13, 48-49, 60, 180). The application was denied initially on September 16, 2020, and upon reconsideration on January 7, 2021 (Tr. 13, 57, 74). On January 19, 2021, Plaintiff filed a written request for hearing (Tr. 13, 103).

On July 27, 2021, Administrative Law Judge Joyce Francis ("ALJ") conducted a telephone hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 13, 29-30). Plaintiff and his counsel, Justin Hight, participated in the telephonic hearing (Id.). Danielle E. Eaton, an impartial vocational expert, testified during the telephonic hearing (Id.).

In a decision dated August 24, 2021, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 13-22). The ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2025 (Tr. 15). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 24, 2019, the alleged onset date (Id.). At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity; cervical and lumbar degenerative disc disease; coronary artery disease; neurogenic bladder; chronic obstructive pulmonary disease (COPD) in conjunction with tobacco abuse; neuropathy; cervical

radiculopathy; impingement of the right shoulder with subacromial bursitis; and bilateral carpal tunnel syndrome (Id.). The ALJ also determined that Plaintiff has the following non-severe impairments: diabetes; hyperlipidemia; hypertension; gastroesophageal reflux disease (GERD); and anxiety (Tr. 16). At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 17).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except as limited by the following: he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; he can frequently stoop and occasionally kneel, crouch, and crawl; he can frequently be exposed to vibration and can have frequent concentrated exposure to atmospheric conditions, as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles (DOT); he can never be exposed to unprotected heights or dangerous moving machinery; he can frequently reach overhead bilaterally, and he can frequently handle, finger, and feel bilaterally; and he must be able to wear protective undergarments at work (Tr. 18).

Additionally, at step four, the ALJ determined that Plaintiff is able to perform his past relevant work as a purchasing agent as this work does not require the performance of work-related activities precluded by his RFC (Tr. 21). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 24, 2019, through the date of the decision (Tr. 21).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 160-62). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

B. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits to persons with disabilities. 42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

C. Challenges to the RFC

Plaintiff makes four arguments in support of his claim that the ALJ's RFC finding is not supported by substantial evidence in the record (DN 19 PageID # 781, 783-804). Specifically, Plaintiff claims: (1) although the ALJ found Plaintiff's neurogenic bladder is a severe impairment, her RFC determination failed to account for his need to self-catheterize multiple times daily; (2) while the ALJ found Plaintiff's anxiety is a medically determinable non-severe impairment, her RFC determination did not discuss whether this impairment imposes any limitations (Id. at PageID # 786-92); (3) the ALJ's evaluation of the medical opinion evidence does not comport with applicable law (Id. at PageID # 792-802); and (4) when the ALJ assessed the consistency of Plaintiff's symptoms, she failed to consider his stellar work history (Id. at PageID # 802-04).

1. *Self-catheterization*

Plaintiff argues although the ALJ found Plaintiff's neurogenic bladder is a severe impairment, her RFC determination failed to account for his need to self-catheterize multiple times daily (Id. at 783-86). In response, Defendant explains that the ALJ tailored her RFC findings to address Plaintiff's supported limitations and Plaintiff has not demonstrated he was more restricted than what is set forth in the RFC determination (DN 23 PageID # 817-18) (citing Tr. 18, 38, 249, 250, 268, 273). In reply, Plaintiff points out that remand is appropriate because the ALJ acknowledged the medical evidence discussing Plaintiff's need to self-catheterize but she failed to account for this need in the RFC (DN 24 PageID # 831-34 n. 3).

In the Disability Report filed at the initial level, Plaintiff included nonfunctioning bladder in the list of conditions that limited his ability to work (Tr. 180). The medical evidence in the record indicates that Plaintiff underwent transurethral resection of his prostate in 2016 (Tr. 272).

He was subsequently assessed with neurogenic bladder (Tr. 271, 272, 276). In November 2019 and February 2020, Plaintiff reported that he performs clean intermittent self-catheterization four to six times per day (Tr. 249, 268, 273, 277). On February 27, 2020, his urologist, James Angel, M.D. stated that due to his urinary retention and neurogenic bladder, he will continue clean intermittent catheterization four to six times daily (Tr. 272). Plaintiff has been prescribed Methenamine Hippurate (Hiprex)[3] to address bladder infections (Tr. 249, 270, 275).

On September 16, 2020, and January 7, 2021, state agency medical consultants Drs. Jacqueline Fister and Neil Armstrong, respectively, reviewed the record and expressed medical findings concerning the exertional, postural, manipulative, and environmental limitations imposed by Plaintiff's various medical impairments, including Plaintiff's bladder condition (Tr. 52-53, 67-69). Notably, Drs. Fister and Armstrong did not acknowledge Plaintiff's need to drain his bladder by catheterization multiple times during an eight-hour workday nor did they express any limitations related to this requirement. On January 20, 2021, LaCosta Carver, APRN noted that Plaintiff has a neurogenic bladder disorder which requires self-catheterization to empty his bladder and opined that he will need 5-6 unscheduled restroom breaks during a workday (Tr. 422).

During the administrative hearing, Plaintiff testified "my bladder is inoperative, so every time I use the bathroom, I have to cath, and in cathing, I get frequent [urinary tract infections]" (Tr. 38). Plaintiff explained that he avoids using public restrooms because he must clean the bathroom before catheterization to reduce the likelihood of UTIs (Id.). Additionally, he advised that self-catheterization takes a while because he must get his "stuff out and get ready" (Id.). Plaintiff testified, "I was cathing at my last job, and of course, when I left my post to go cath, it

---

3 Methenamine is an antibacterial medicine used to treat or prevent bladder infections in adults and children at least 6 years old.   https://www.drugs.com/mtm/methenamine.html

took me a little while, and that wasn't good" (Id.). Plaintiff indicated that he must self-catheterize "at least five times a day" (Id.).

The vocational expert, Ms. Eaton, testified that Plaintiff's past relevant work is classified in the Dictionary of Occupational Titles ("DOT") as a purchasing agent, DOT code No. 162.157-038, and is performed at the light exertional level with an SVP of 7 (Tr. 42). She noted that Plaintiff performed his job up to the heavy exertional level (Id.).

In response to the ALJ's second hypothetical question—which set forth the limitations in the RFC determination—Ms. Eaton indicated that Plaintiff would be able to return to his past work as generally performed in the national economy (Id.). She also identified three other types of jobs that Plaintiff was capable of performing (Tr. 42-44). Notably, the ALJ's second hypothetical question included "can wear protective undergarments at work" as a limitation (Tr. 44). Ms. Eaton asked for clarification, and the ALJ made clear that the protective undergarments would be worn so as not to interfere with the performance of the work duties (Id.). This exchange suggests that the ALJ mistakenly believed that Plaintiff suffered from urinary incontinence, the unintentional passing of urine, and she sought to remedy the issue with an adult diaper.

The ALJ subsequently issued a decision that indicates at step two she found that Plaintiff's neurogenic bladder is a medically determinable impairment that is "severe" within the meaning of the regulations (Tr. 15). At step three, the ALJ determined that Plaintiff's neurogenic bladder symptoms do not rise to listing-level (Tr. 17). At step four, the ALJ acknowledged that Plaintiff alleged disability due to a non-functioning bladder and six other physical impairments (Tr. 18). The ALJ's discussion of the medical evidence concerning the bladder impairment reads,

> [H]is neurogenic bladder symptoms have similarly remained stable with daily self-catheterization.

> . . .
>
> In addition to the above, the claimant has received urologic care due to difficulty emptying his bladder (Ex.3F/9). Although the cause of the claimant's neurogenic bladder is unclear, he has been stable on self-treated clean intermittent catheterization since prior to the alleged onset date (Ex.3F/8, 13).

(Tr. 19, 20).

The ALJ's RFC determination includes a limitation that Plaintiff "must be able to wear protective undergarments at work" (Tr. 18). Again, it appears that the ALJ mistakenly believed Plaintiff suffered from urinary incontinence and she sought to remedy the issue with an adult diaper. This is not an appropriate accommodation for Plaintiff. All the evidence in the record shows that Plaintiff experienced urinary retention and that he must drain his bladder by catheterization multiple times during an eight-hour workday. As Plaintiff aptly points out, wearing an adult diaper is not a substitute for his need to self-catheterize. Clearly, substantial evidence in the record does not support the protective undergarment limitation in the ALJ's RFC determination. Moreover, because of the ALJ's mistake, the RFC determination fails to address Plaintiff's need for extended bathroom breaks and unscheduled bathroom breaks to perform the self-catheterization.

As mentioned above, Ms. Eaton's expert opinion is based upon a hypothetical question that included the ALJ's erroneous limitation and omitted limitations that accurately portray Plaintiff's bladder impairment. The Sixth Circuit has instructed that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987)

9

(quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).   This means that Ms. Eaton's testimony does not constitute substantial evidence to support the ALJ's finding that Plaintiff is capable of performing his past relevant work as a purchasing agent because this work does not require the performance of work-related activities precluded by the Plaintiff's RFC (Tr. 21, Finding No. 6).  Relatedly, Plaintiff contends that she has been prejudice by the ALJ's mistake because the cross-examination of Ms. Eaton revealed that an individual who requires four additional unscheduled breaks or who is off task more than 10% of the workday cannot sustain competitive employment (DN 19 PageID # 785) (citing Tr. 44-46).

      Defendant posits, "[t]he fact that self-catheterization did not prevent Plaintiff from performing substantial gainful activity before his alleged onset date supports the ALJ's reasonable conclusion that additional limitations for catheterization were not supported in the RFC" (DN 23 PageID # 818).  Defendant's starkly disturbing assertion does not acknowledge the ALJ's complete failure to recognize and address the impact of Plaintiff's need to self-catheterize multiple times each day and the amount of time it takes to perform each self-catheterization.  Moreover, Defendant also turns a blind eye to the well settled Sixth Circuit precedent mentioned above which holds that a vocational expert's testimony constitutes substantial evidence only if the hypothetical question accurately portrays Plaintiff's individual physical and mental impairments.  See Varley, 820 F.2d at 779.  In the absence of information regarding Plaintiff's need to self-catheterize multiple times each day and the amount of time it takes to perform each self-catheterization, a vocational expert cannot render an accurate opinion concerning Plaintiff's ability to return to his past work as generally performed and as his ability to perform other types of jobs in the national economy.

In sum, substantial evidence does not support the ALJ's RFC determination and her finding that Plaintiff is able to perform his past relevant work. Considering the circumstances, the Court deems it unnecessary to address Plaintiff's three remaining claims.

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . . ." Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006). Sentence four of 42 U.S.C. § 405(g), authorizes the Court to issue a final judgment reversing the final decision of the Commissioner and remand the case to the Commissioner with instructions to consider additional evidence and/or conduct additional proceedings to remedy a defect in the original proceedings. Faucher v. Sec'y of Health & Hum. Servs., 17 F.3d 171, 174-75 (6th Cir. 1994). For the above stated reasons, the final decision of the Commissioner will be reversed, and the case remanded to the Commissioner for further proceedings.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED**, and pursuant to sentence four of 42 U.S.C. § 405(g) the case is **REMANDED** to the Commissioner with instructions to consider additional evidence and conduct additional proceedings to remedy the above identified defects in the original proceedings.

December 19, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:		Counsel